ROSA ROLLINS v. THE STATE.

No. 16870. Delivered June 20, 1934.

The opinion states the case.

*H. S. Bonham,* of Corpus Christi, and *Alex F. Cox,* of Beeville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for two years.

The trial was had in Bee County on a change of venue from Live Oak County.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Oscar W. Rollins by shooting him with a gun.

Deceased was appellant's husband. He carried several thousand dollars life insurance, appellant being his beneficiary. On the morning of June 9, 1932, appellant appeared at the home of neighbors and advised them that deceased had shot himself. An investigation disclosed that someone had shot deceased with a pistol.

The State relied upon circumstantial evidence. There was proof to the effect that prior to the death of deceased appellant had expressed the desire to get rid of him. It was shown that only appellant and her children were in the room with deceased at the time he met his death. Circumstantially the proof on the part of the State tended to show that deceased had not committed suicide, but that the shot which killed him had been fired by appellant.

Appellant did not testify, and introduced no witnesses.

Upon being notified of the death of deceased, the sheriff, county attorney and justice of the peace went to the home of appellant. (See bills of exception 2 to 4, inclusive, and bill of exception 30). The justice testified that his purpose in going to the scene was to hold an inquest. His investigation of the situation prior to the time that appellant was questioned caused him to suspect appellant of having shot her husband. He advised the sheriff and county attorney that he believed "there was a case of murder there." Later he and the county attorney called appellant before them in her home and questioned her. The justice advised the county attorney that appellant ought to be warned. The county attorney demurred, saying that she was not under arrest. The sheriff was present in the house at the time appellant was questioned and her answers reduced to writing. It appears not only that the justice was holding an inquest but that he was in effect holding a court of inquiry to determine whether appellant had killed deceased. After swearing appellant and questioning her, the statement was reduced to writing and signed by appellant. The sheriff testified that he might have told appellant in the conversation he had with her that she was charged with the commission of the offense; that if he made such statement it was for the purpose of getting information. He testified that upon his arrival at the scene he asked appellant some questions concerning the killing; that she asked him to come outside, as she did not want to talk in the presence of company.

Appellant timely and properly objected to the introduction in evidence of her declarations on the ground that she was under arrest and that the provisions of Art. 727, C. C. P., relating to confessions, had not been complied with. We quote Article 727, in part, as follows: "The confession shall not be used if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made in the voluntary statement of accused, taken before an examining court in accordance with law, or be made in writing and signed by him; which written statement shall show that he has been warned by the person to whom the same is made: First, that he does not have to make any statement at all. Second, that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made; or, unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish

his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

We think the objection was well taken. The declarations were made to the sheriff, justice of the peace and county attorney with reference to the transaction resulting in the death of deceased. Appellant was not warned. The justice of the peace was in the attitude of sitting as a court of inquiry, his version of the matter being that he suspected appellant of having killed her husband. The statement appellant made to the sheriff upon its face shows that appellant felt that she was being suspected of having murdered deceased, and was being held in custody for the offense. It is observed that she stated to the sheriff in effect that if she told him the truth about the matter he would not help her; and again, that she asked the sheriff if he thought she could hire the district attorney not to prosecute her. While at the moment appellant had not been formally arrested, she was in the presence of the sheriff, the justice of the peace and county attorney, and shortly after she made her statement was put into custody and taken to jail. That prior to having the conversation with appellant the officers had not taken her into custody is not controlling in determining whether the receipt of the evidence was inhibited by the statute. The impression made upon the accused is to be taken into account. Lightfoot v. State, 35 S. W. (2d) 163. We quote the language of Judge Davidson in Buddy v. State, 227 S. W., 323, as follows:

"One of the questions presented is that during the day of the 26th the justice of the peace sent for appellant. Appellant went to his office, and was there questioned with reference to this transaction, and his statement seems to have been reduced to writing. The whole matter came up before the justice of the peace with reference to the robbery transaction. Immediately after this appellant was arrested. Objection was made to the introduction of this testimony, which we think was well taken. Appellant was not strictly under arrest at the time, but he was suspected of crime and being questioned with reference to it by the justice of the peace. He was not warned. Under such circumstances this court has held in quite a number of cases that this character of testimony, either for impeachment or as original was not introducible. See Wood v. State, 22 Texas App., 431, 3 S. W., 336; Reynolds v. State, 82 Texas Crim. Rep., 443, 199 S. W., 636; Oliver v. State, 81 Texas Crim. Rep., 529, 197 S. W., 185; Calloway v. State, 55 Texas Crim. Rep., 262, 116 S. W., 575; Fry v. State, 58 Texas Crim. Rep.,

169, 124 S. W., 920; Simmons v. State, 79 Texas Crim. Rep., 341, 184 S. W., 226."

After introducing appellant's declarations, the State proceeded circumstantially to establish their falsity. Thus the State was enabled to use the declarations for the purpose of proving appellant's guilt. Under the circumstances reflected by the record, we are constrained to hold that reversible error is presented.

The State introduced in evidence, over appellant' objection, several articles the sheriff secured in a search of appellant's residence. It appears from the bill that after placing appellant in jail the sheriff returned to her home and after searching the house, secured the articles in question. The sheriff was not armed with a search warrant, and had not obtained appellant's consent to the search. The qualification of the trial court to the bill of exception is to the effect that appellant had left her house in charge of C. E. Brown, who gave the sheriff authority to search the same. The qualification is opposed to the contention of appellant that the key had been delivered to Brown for the purpose alone of opening the house for occupancy by appellant's relatives. The fact that the statement of facts might support the contention made by appellant is of no avail. Appellant did not except to the qualification of the court, and we are bound by it. If the bill had disclosed that the key had been delivered to Brown so that he might open the house for the purpose mentioned, a different question would have been presented.

The judgment is reversed and the caused remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.